**MISS WORLD (UK) LIMITED, et al., Plaintiffs–Appellants,**

v.

**MRS. AMERICA PAGEANTS, INC., et al., Defendants–Appellees.**

**No. 87–6607.**

United States Court of Appeals, Ninth Circuit.

Submitted July 25, 1988 [*].

Decided Sept. 15, 1988.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Dorette S. Feit, Irell & Manella, Los Angeles, Cal., Davis & Gilbert, New York City, for plaintiffs-appellants.

Ronald S. Rosen, Silverberg, Rosen, Leon & Behr, Los Angeles, Cal., for defendants-appellees.

Before SNEED, KOZINSKI and THOMPSON, Circuit Judges.

SNEED, Senior Circuit Judge:

Miss World (UK) Ltd. and Miss World (Jersey) Ltd. (collectively hereinafter referred to as "Miss World Ltd.") appeal the denial of a motion for a preliminary injunction against Mrs. America Pageants, Inc. and its promoters' use of the title "Mrs. of the World" in a beauty pageant. We affirm.

I.

FACTS AND PROCEEDINGS BELOW

Miss World Ltd. has produced beauty pageants since 1951. Unmarried women from over eighty countries annually vie for the title of "Miss World." The winner of

each competition spends the next year representing Miss World at various charitable and commercial functions.

The Miss World contest, which is held in the United Kingdom, has been publicized and televised in the United States for a number of years. The United States has had a contestant in the pageant since 1952. The competition to select that contestant is run by franchisees of Miss World Ltd. Thus, as Miss World Ltd.'s brief indicates, 'MISS WORLD' connotes the corporate entities involved, the Miss World Ltd.'s international pageant, the contestants and, of course, the titlist.

In 1984, one of the defendant-appellees, David Z. Marmel, the producer of the Mrs. America Pageant, incorporated Mrs. of the World, Inc.[1] to produce a new international beauty pageant for married women. The idea has its source in the desire to create an international pageant to complement the Mrs. America Pageants, Inc. whose contestants were married women from each of the United States. The projected international competition would mirror the Mrs. America Pageant's stress on "not only beauty but also the expression of opinions on marriage and important current issues" and additionally "would foster greater communication, friendship and mutual understanding among people of all cultures." Appellees' Brief, p. 4.

Mrs. America Pageants chose the name "Mrs. of the World" for their new pageant. Miss World Ltd., upon learning of this pageant, demanded that Mrs. America Pageants stop using that name. Mrs. America Pageants assured Miss World Inc. that they did not intend to cause confusion or exploit its mark, and changed the name of their 1984 pageant to "Mrs. Woman of the World."[2] Although, by their account, the pageant was a great success, receiving extensive media coverage and being broadcast internationally, in their subsequent pageants Mrs. America Pageants reverted to the name it had originally chosen, "Mrs. of the World." Through the letters of counsel, the parties asserted their legal position with respect to whether the trademark "Mrs. of the World" infringed on the trademark "Miss World." Miss World Ltd. claims that there was some sort of agreement between the parties that Mrs. America Pageants would only use "Mrs. Woman of the World." Miss World Ltd. does not attempt to rest this case exclusively on this agreement.

On September 15, 1986, while Mrs. America Pageants was taping its third Mrs. of the World pageant, Miss World Ltd. brought this suit in the Central District of California for service mark infringement and unfair competition under the Lanham Act and for unfair competition under California law.[3] The district court denied Miss World Ltd.'s request for a temporary restraining order and its motion for a preliminary injunction. After requesting and being denied an injunction pending appeal Miss World Ltd. filed an emergency motion with this court seeking an injunction pending appeal and an expedited appeal. This court granted the motion in part by enjoining Mrs. America Pageants' use of "Mrs. World," but permitting the use of "Mrs. of the World." After briefing and argument this court vacated the district court's order and remanded with instructions to make more detailed findings on the factors relevant to assessing the likelihood of confusion in the use of "Mrs. of the World." After applying the factors, the district court again came to the conclusion that a preliminary injunction should not issue. Miss World Ltd. now appeals from that decision.

II.

JURISDICTION

The district court had jurisdiction under the Lanham Act, 15 U.S.C. § 1121, 28 U.S.

---

1. The title of the company and the contest actually uses an asterisk or small star in place of the period after the word "Mrs".

2. Again, the period following "Mrs" was replaced by an asterisk or star.

3. They also attempted to enjoin the live broadcast of the 1988 pageant in Australia through the Australian courts but were apparently unsuccessful.

C. § 1331(c) and § 1338(a) and pendent jurisdiction over the related state law claims under 28 U.S.C. § 1338(b). This court's jurisdiction is founded upon 28 U.S.C. § 1292(a)(1).

## III.

## STANDARD OF REVIEW

We review the legal conclusion of likelihood of confusion *de novo,* but we review the facts leading to that conclusion under the clearly erroneous standard. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 782 F.2d 1508, 1509 (9th Cir.1986).

## IV.

## THE PRELIMINARY INJUNCTION STANDARD

The standard for granting a preliminary injunction is settled: "To obtain a preliminary injunction, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor." *Apple Computer, Inc. v. Formula Int'l, Inc.,* 725 F.2d 521, 523 (9th Cir.1984). "These are not two distinct tests, but rather the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987) (quoting *San Diego Comm. Against Registration and the Draft (CARD) v. Governing Bd. of the Grossmont Union High School Dist.,* 790 F.2d 1471, 1473 n. 3 (9th Cir.1986)).

## V.

## LIKELIHOOD OF SUCCESS ON THE MERITS

██ The district court found that Miss World Ltd. showed "little probability of success on the merits." *Miss World Ltd.*

*v. Mrs. America Pageants, Inc.,* Memorandum Opinion at 2. We agree. Miss World Ltd.'s infringement claim and related state law claims turn on whether there is a likelihood of confusion between the "Miss World" service mark and the title "Mrs. of the World." *See Rodeo Collection,* 812 F.2d at 1217. We employ a five-factor test in determining whether there is a likelihood of confusion between two marks; (1) the strength of the registered service mark: (2) the relationship between the services identified by the competing service marks; (3) the similarity of the competing service marks; (4) the evidence of actual confusion; and (5) the junior user's intent in adopting its service mark. *Id.* We review the district court's findings with respect to the historical facts, as they relate to these factors, under the clearly erroneous standard.

1. *Strength of Miss World's Service Mark*

██ The strength of a given mark rests on its distinctiveness. The scope of protection afforded a strong mark is greater than that afforded a weak one. In determining the distinctiveness of a mark one looks to the degree to which the public associates the mark with a particular source. As we stated in *Rodeo Collection,* a "mark's strength can be measured in terms of its location along a continuum stretching from arbitrary, inherently strong marks, to suggestive marks, to descriptive marks, to generic, inherently weak marks." 812 F.2d at 1218; *see Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.,* 601 F.2d 1011, 1014–15 (9th Cir.1979). Miss World Ltd.'s mark is registered. This constitutes prima facie evidence that it is not a generic mark. 15 U.S.C. § 1057(b). Furthermore, its registration makes the mark "incontestable" under the Lanham Act, 15 U.S.C. §§ 1065, 1115(b); *see Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661–62, 83 L.Ed.2d 582 (1985).[4]

---

**4.** Incontestable marks are conclusively presumed to have secondary meaning and incontestability is "conclusive evidence of the regis-

trant's exclusive right to use the registered mark." 15 U.S.C. 1115(b). Secondary meaning

This does not establish, however, that it is a particularly strong mark. Miss World Ltd. argues, however, that its mark is strong because it is incontestable. The conclusion does not follow. The district court decided that although the mark was incontestable it was weak. The court found it

> apparent that any secondary meaning linking "Miss World" with "beauty pageant" in the public's mind is entirely derivative. Most other pageants use a mark which is composed of a marital prefix and a defining geographic term. As a result, any combination of a marital prefix and geographic term "means" beauty pageant.

Memorandum Opinion at 4–5. Thus, the district court found that the "secondary meaning" of the Miss World Ltd. mark was that it signified a beauty contest in the same manner as would "any combination of marital prefix and geographic term...." *Id.* Beyond this point it was not unique.

Miss World Ltd., in rebuttal, argues that its mark is strong, not weak. It argues that the record is devoid of any evidence to show that the secondary meaning of "Miss World" merely signified another beauty pageant.

█ As already pointed out, an incontestable status does not alone establish a strong mark. "Placement on the spectrum of distinctiveness does not end the enquiry as to the strength of a mark: it is only the first step. The second step is to determine the strength of this mark in the marketplace. That is, its degree of recognition in the minds of the relevant customer class." 1 J. McCarthy, *Trademarks and Unfair Competition* § 11:1, at 434 (2d ed. 1984) (footnote omitted); *see id.* § 11:24, at 503.

█ We apply the "imagination test" and the "need test" to determine the strength of a mark. *Rodeo Collection,* 812 F.2d at 1218. The imagination test asks how much imagination a consumer must use to associate a given mark with the goods or services it identifies. The product signified by an arbitrary mark requires great imagination. The more imagination required, the stronger the mark is. The "need test" approaches the problem from the opposite end. It asks to what extent a mark is actually needed by competitors to identify their goods or services. If "the message conveyed by the mark about the goods or services is so direct and clear that competing sellers would be likely to [need to] use the term in describing or advertising their goods [or services], then this indicates the mark is descriptive." 1 J. McCarthy, *supra,* § 11:21, at 493. As the amount of imagination needed increases, the need of the mark to describe the product decreases. *See Union Carbide Corp. v. Ever–Ready Inc.,* 531 F.2d 366, 379 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

█ The district court, in effect, found the mark's imagination aspect low and its need aspect high. The court noted that "[m]ost other pageants use a mark which is composed of a marital prefix and a defining geographic term. As a result any combination of a marital prefix and geographic term 'means' beauty pageant." Memorandum Opinion at 5. To describe the product, a beauty pageant, those terms are generally used. When used, little imagination is required to understand that it signifies a beauty pageant. These are indications of a not strong mark.

This analysis suggests that the mark "Mrs. of the World" will not create confusion in the minds of beauty pageant consumers as to the source of the pageant. We view the beauty pageant industry's marks as a "crowded field": In a " 'crowded' field of similar marks, each member of the crowd is relatively 'weak' in its ability to prevent use by others in the crowd." 1 J. McCarthy, *supra,* § 11:26, at 511. Simply put, "a mark which is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive'. It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other." *Id.*

refers to the consumer's mental association of the mark with the source of the product.

There are, of course, limits to the "crowded field" analysis. To devise a mark that appears to signify that it is a "subsidiary" of the complaining entity pushes the analysis too far. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130 (9th Cir.1979) (protecting Miss U.S.A. from Miss Nude U.S.A.); *Miss Universe, Inc. v. Little Miss U.S.A., Inc.*, 212 U.S.P.Q. 425 (N.D. Ga.1981) (protecting the mark "Miss U.S. A." from "Little Miss U.S.A."); *Miss Universe, Inc. v. Miss Teen U.S.A., Inc.*, 209 U.S.P.Q. 698, 707–08 (N.D.Ga.1980) (protecting the mark "Miss U.S.A." from "Miss Teen U.S.A."). These cases are not controlling. Here "Mrs. of the World" has used a different marital prefix and has inserted connecting words. We conclude that Miss World Ltd.'s mark is relatively weak.

### 2. *Relationship Between the Services*

Both parties produce international beauty pageants. The significant difference between them is that contestants in the Miss World beauty pageant must be single while those in the Mrs. of the World pageant must be married.

The district court, in its effort to blunt the force of the similarity of the services, found "[l]ittle likelihood" that "people in the pageant market will confuse the two products." To reach this conclusion, the court divided what it assumed, in the absence of proof by either party, was the relevant market into three subparts: contestants, spectators, and advertisers. It found no likelihood of confusion among contestants because they are naturally eligible for only one of the pageants at a time. It also found little likelihood of confusion among advertisers presumably because of their relative sophistication. The category of spectators was subdivided between those who are "informed and interested" as opposed to those who are "only casually involved." It found that spectators "with more than a passing interest in

the beauty pageant industry will distinguish between 'Miss World' and 'Mrs. of the World' and the sources of each pageant." Memorandum Opinion at 6–7. As to casual viewers the district court, while doubting that they were a part of the relevant market, nonetheless decided that those who might be confused as to differences between plaintiff's and defendant's services would not significantly affect plaintiff's television ratings and thus advertising revenues.

We cannot wholly accept this analysis. The issue under this heading, "Relationship Between the Services," is the extent of the similarity of the services. We must agree with Miss World Ltd. that the services offered are quite similar. Viewed from the standpoint of the general public, we find it hard to believe that the services are not related.[5]

### 3. *Similarity of the Marks*

The similarity of marks is assessed in terms of their sight, sound, and meaning. *Rodeo Collection*, 812 F.2d at 1219; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir.1979). "Miss World" is a composite mark and thus must be examined "in [its] entirety, not piece by piece." *Rodeo Collection*, 812 F.2d at 1218; *see California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir.1985); *AMF*, 599 F.2d at 351. The district court decided that the "difference in sight, sound, and meaning between 'Miss' and 'Mrs.' is readily apparent to all people." Furthermore, it stated:

> Examined in the context of the industry, "Miss World" and "Mrs. of the World" are no more similar as to sight, sound, and meaning than the marks used by all other pageants, such as Miss America, Mrs. America, Miss U.S.A., Miss Universe, and Miss California. It defies common sense to declare that "Mrs. of the World" will be confused

---

**5.** The district court's subdivision of "consumers," however, may have been based on the concept that consumers who are "wholly indifferent" or "totally careless" need not be considered. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir.1979); 2 J. McCarthy, *supra*,

§ 23:1, at 47; *id.* § 23:27, at 128–29. Various academic authorities note that likelihood of confusion is to be determined at the level of the general public, the casual, average, purchaser, not professionals or experts in the field. *See id.*, § 23:29 at 133–34.

with "Miss World" in an industry where all of the marks in use require consumers to make equally fine distinctions in order for any of the marks to have specific source identity.

Memorandum Opinion at 8–9.

The district court apparently made the comparison " 'in light of what occurs in the marketplace,' taking into account the 'circumstances surrounding the purchase of the goods.' " *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir.1980) (quoting *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 759 (9th Cir.1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979)). This is not enough. It should have analyzed each of the elements that make up what has been called the "similarity trilogy." The sight element may be analyzed only by a "subjective 'eyeball' test." 2 J. McCarthy, *supra*, § 23:7, at 63. The two marks appear somewhat similar because "Mrs. of the World" is designed on letterhead and promotional material in a manner that deemphasizes the "of the" in the title. The addition of a "star figure" in place of the period normally found after "Mrs." is, however, somewhat distinguishing. Phonetic similarity is the second element of the trilogy. "Mrs. of the World" is phonetically similar to "Miss World" in two ways. Both have the word "world" and "Mrs." can be pronounced so that it sounds like the plural of "Miss"—"Misses." The addition of the words "of the" between "Mrs." and "World" somewhat diminishes the phonetic similarity. As to meaning, the third element, it is self-evident that "Miss" and "Mrs." do not mean the same thing. While both refer to marital status, the particular marital status to which each refers is different.

While the issue of similarity of marks is a close one, we conclude that the district court's conclusion of dissimilarity should be respected. We would have reached the same result.

### 4. *Actual Confusion*

"Evidence of actual confusion is strong evidence of likelihood of confusion, but it is not determinative." *Rodeo Collection*, 812 F.2d at 1219. The district court found that Miss World Ltd.'s offer of confusion by the husband of a contestant, an announcer, and a prospective contestant was unconvincing. Nonetheless it recognized that there may be a possibility of actual confusion because of the inadequacy of the record. Miss World Ltd. presented weak, hearsay evidence of confusion by a few people. Moreover, at least one of those instances involved an inquiry of Miss World Ltd. about the existence of a pageant for married women. This is inconclusive. It might well indicate an understanding that a beauty pageant for married women was being offered by another source. *See Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir.1980); *see also Alpha Industries*, 616 F.2d at 445.

The heart of the district court's analysis of the confusion issue is that in the crowded field of beauty pageant's those whose awareness is important to the plaintiffs are not confused and that any possible confusion with respect to source on the part of others causes no economic injury to the plaintiffs and results in no infringement of its mark. The situation might have been different had plaintiffs been able to establish that much of the public attributed its mark to its enterprise and assumed that any "world" beauty pageant must have its source in that enterprise. This showing was not made, however. We find no error in the district court's conclusion with respect to confusion.

### 5. *Intent*

As we explained in *Rodeo Collection*, "[e]vidence of wrongful intent, when present, has some bearing on the likelihood of confusion." 812 F.2d at 1219. Here, the district court found

no doubt that defendants intended to adopt the name "Mrs. of the World" for their pageant. It may be inferred that by adopting this title they hoped to preempt others from using the name "Mrs. World." That intent is not wrongful. Because of the industry-wide meaning produced by combining a marital pre-

fix with a defining geographic term, any entrant into the pageant market has a finite number of names with which to work.

Memorandum Opinion at 10.

This conclusion echos arguments already addressed. We find no error.

## VI.

### CONCLUSION

We conclude that plaintiffs have neither established a likelihood of success on the merits nor the possibility of irreparable injury (or even significant hardships) resulting from defendants' use of its mark. The district court so held. In so doing, it was influenced by the concern that to enjoin the defendants would inflict more harm on defendants than any harm of which the plaintiffs might be relieved. Perhaps the plaintiffs might prove their case yet. Their prospects do not appear bright; but this proceeding, it must be remembered, is merely to obtain a preliminary injunction.

AFFIRMED.