967 F.2d 596
 24 U.S.P.Q.2d 1365
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
VISA INTERNATIONAL SERVICE ASSOCIATION, Plaintiff-Appellant,
v.
EASTERN FINANCIAL FEDERAL CREDIT UNION, Defendant-Appellee.
 No. 92-55038.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 1, 1992.*
Decided June 19, 1992.
 
 1
 Before D.W. NELSON and DAVID R. THOMPSON, Circuit Judges, and PANNER, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellant Visa International Service Association ("Visa") brought this trademark infringement action against appellee Eastern Financial Federal Credit Union ("Eastern"), alleging that Eastern's "MoneyPlus" Mastercard infringed Visa's "Plus System" trademark for its network linking automatic teller machines ("ATMs"). The district court denied Visa's motion for a preliminary injunction preventing Eastern from using "MoneyPlus," and Visa appeals. We affirm.
 
 
 4
 To obtain a preliminary injunction, Visa must show either (1) a probability of success on the merits, coupled with the possibility of irreparable injury from continued infringement, or (2) the existence of serious questions regarding the merits, coupled with a balance of hardships that tips sharply in Visa's favor. Ocean Garden, Inc. v. Marktrade Co., 953 F.2d 500, 506 (9th Cir.1991). To succeed on the merits, Visa must show that it is likely that customers will be confused by the two trademarks. 2 T. McCarthy, Trademarks and Unfair Competition § 23:1, at 42 (2nd ed. 1984).
 
 
 5
 In trademark infringement cases, the district court's conclusions of law are reviewed de novo, while its findings of fact are reviewed under the clearly erroneous standard. Inwood Labs v. Ives Labs, 456 U.S. 844, 855 (1982). Likelihood of confusion, the sine qua non of trademark infringement, is a mixed question of law and fact, and the district court's findings regarding likelihood of confusion may not be reversed unless they are clearly erroneous. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355-56 (9th Cir.1985) (en banc).
 
 
 6
 On a motion for a preliminary injunction, the district court's findings regarding likelihood of confusion are entitled to particular deference. While there is a multi-factor test to determine likelihood of confusion, on a preliminary injunction motion the district court need not consider each factor, and the presence or absence of one factor may be sufficient to support the district court's decision on appeal. See First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1384 (9th Cir.1987).
 
 
 7
 With the agreement of both parties, the district court applied the Ninth Circuit's five-factor test to determine likelihood of confusion. The five factors it considered are: "(1) the strength of the registered service mark; (2) the relationship between the services identified by the competing service marks; (3) the similarity of the competing service marks; (4) the evidence of actual confusion; and (5) [Eastern]'s intent in adopting its service mark." Miss World (UK) Ltd. v. Mrs. America Pageants, 856 F.2d 1445, 1448 (9th Cir.1988). We consider each factor in turn.
 
 
 8
 a. Strength of Visa's Trademark
 
 
 9
 Eastern has conceded on appeal that Visa's trademarks are valid. Indeed, most of them are incontestable under 15 U.S.C. § 1115(b). Contrary to Visa's assertion, however, the incontestable validity of its trademarks has nothing to do with how strong its marks are. See Miss World, 856 F.2d at 1448-49 (finding incontestable mark weak). There are three basic measures of the strength of a trademark: the inherent nature of the mark itself, the effect of use and advertising of the mark on customer perception, and the existence of competing uses of other, similar marks. We find that the nature of the mark and the existence of similar marks indicate that Visa's trademark is weak.
 
 
 10
 The district court found that "Plus" "comes a lot closer to being a descriptive mark than it does to being a distinctive [i.e. arbitrary] mark."[1] That finding is not clearly erroneous. Numerous cases have held that the term "Plus" has generally laudatory connotations which make its use desirable in a variety of industries, thus weakening the mark. While this may not make the mark descriptive of a particular product in all contexts, the term "Plus" is at least suggestive of "quality" or "something extra." See, e.g., Plus Prods. v. Plus Discount Foods, 722 F.2d 999, 1005 (2nd Cir.1983); Plus Prods. v. Medical Modalities, 211 U.S.P.Q. 1199, 1207 (Trademk.Tr. & App.Bd.1981); Plus Prods v. Redken Labs, 199 U.S.P.Q. 111, 116 (Trademk.Tr. & App.Bd.1978); Plus Prods. v. General Mills, 188 U.S.P.Q. 520, 522 (Trademk.Tr. & App.Bd.1975); 1 T. McCarthy, Trademarks and Unfair Competition § 11:26, at 512 (laudatory terms make weak trademarks). Further, as the district court noted, "Plus" has a specific, literal meaning in the financial services industry--"addition," with its connotations of money or value added. Again, while the term is not precisely descriptive of the services Visa offers, it is at least suggestive. The district court's finding in this regard is not clearly erroneous.
 
 
 11
 Widespread use of similar marks within an industry is further evidence that the trademark at issue is weak. See, e.g., Miss World, 856 F.2d at 1449-50; 1 T. McCarthy, Trademarks and Unfair Competition § 11:26, at 513; Restatement (Second) of Torts § 729(g).[2] Eastern presented evidence (much of it from the testimony of Visa's own officials) that no fewer than fifteen different financial institutions used the word "Plus" in the name of their ATM card (the same place Eastern used it). Such widespread use of "Plus" within the financial services industry weakens Visa's trademark substantially.
 
 
 12
 Weak trademarks are nonetheless entitled to some protection. See 1 T. McCarthy, Trademarks and Unfair Competition § 11:24, at 505. However, the scope of that protection is narrower than it would be if the mark were strong. Specifically, a weak trademark is infringed "only if the marks are quite similar, and the goods closely related." AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 350 (9th Cir.1979); accord New West Corp. v. NYM Co. of Calif., 595 F.2d 1194, 1202 (9th Cir.1979).
 
 
 13
 b. Do the Marks Cover Related Services?
 
 
 14
 Eastern's card and Visa's network do not do the same thing. Eastern's Mastercard allows consumers to charge purchases, and also to obtain cash by using an ATM network. The Plus system merely allows holders of a bank card to get cash from other banks on the same network. Thus, the services are complementary, rather than competitive--both a card and a network must be employed to get cash from a bank. However, competition between trademarked goods is not required to prove confusion. 2 T. McCarthy, Trademarks and Unfair Competition § 24:4, at 172-73. It is sufficient to satisfy this factor if goods or services are "related." Miss World, 856 F.2d at 1450. Services which are complementary, like those at issue here, are unquestionably "related." E. & J. Gallo Winery v. Gallo Cattle Co., 955 F.2d 1327, 1339 (9th Cir.1992).
 
 
 15
 Of course, it is also true that the more closely related two services are, the greater is the likelihood of confusion. Lindy Pen Co. v. Bic Pen Corp., 796 F.2d 254, 255 (9th Cir.1986). In this case, the services are related, but not identical or in direct competition. Because of the weakness of Visa's mark, the absence of a close relationship between the services counsels against a finding of likelihood of confusion.
 
 
 16
 c. Are the Trademarks Similar?
 
 
 17
 The similarity of trademarks is assessed in terms of their "sight, sound, and meaning." Miss World, 856 F.2d at 1450. The district court found that MoneyPlus "doesn't have the same sight, it doesn't have the same sound" as Plus System, and that "the marks themselves have almost nothing in common." This conclusion is not clearly erroneous. Applying the "subjective eyeball test," Miss World, 856 F.2d at 1451, the MoneyPlus card and the Plus System logo do not appear at all similar. MoneyPlus is one word, in gold on a red background, written across the top front of a credit card and unadorned by a logo. Plus System is dominated by the Plus logo, of which the words are a small part. "Plus System" is written as two separate words on two separate lines, and appears on the bottom rear of cards in much smaller print than does MoneyPlus, usually (but not always) in blue. Plus System does not appear on cards without the attached logo. The only similarities between the two marks are the use of the letters "Plus" and the typeface in which they appear. Nor is there phoenetic similarity between the two marks. Despite their common use of the word "Plus," MoneyPlus and Plus System do not sound similar at all. Finally, Visa has presented no evidence to suggest that the two phrases have the same meaning, or even any similarity in meaning.
 
 
 18
 Visa seeks to characterize the marks as similar by suggesting that the court should disregard "System" because it was not claimed as distinctive in Visa's trademark application, disregard "Money" because it is generic, and disregard the logo because (in spite of appearances) the words are dominant. This would leave the court to compare "Plus" with "Plus," terms which are identical. However, this is not the appropriate comparison. Instead, "[i]n analyzing the similarity of the marks, the court is to view the marks as a whole, as they appear in the marketplace." Gallo, 955 F.2d at 1339. Even words which are not claimed as distinctive before the Registrar of Trademarks must be considered. Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 1570 (Fed.Cir.1983).
 
 
 19
 In considering whether marks which have words in common are substantially similar, the district court is entitled to a great deal of deference. In Nutri/System, Inc. v. Con-Stan Indus., this court upheld a district court's finding that "Nutri/System" and "Nutri-Trim" were not similar. 809 F.2d 601, 605-06 (9th Cir.1987). By contrast, in Gallo, this court upheld a district court's finding that "Gallo Winery" and "Joseph Gallo Salame" were similar. 955 F.2d at 1339. The Gallo court reconciled its decision with Nutri/System on the grounds that each case affirmed the district court's determination, and those determinations were entitled to deference. Id. Thus, it appears that in this factual context the district court's conclusion should not be overturned. Accord Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 846 n. 13 (9th Cir.1987) (whether dissimilarity in logos prevents confusion is properly left to the trier of fact).
 
 
 20
 d. Was there Evidence of Actual Confusion?
 
 
 21
 While Visa need not show actual confusion in order to prevail on its trademark claim, Eclipse, 894 F.2d at 1118, proof of actual confusion is highly probative. Such proof may take the form of surveys of potential consumers, as well as documented cases of purchasing confusion. Gallo, 955 F.2d at 1339-40; Levi Strauss, 778 F.2d at 1360 (survey evidence is relevant to show actual confusion).
 
 
 22
 Visa claims that its survey proves that 20% of the population will be confused by the MoneyPlus logo. However, this survey seems flawed in at least two respects. First, and most important, Visa did not use an actual MoneyPlus card in its survey. When Eastern repeated the same survey using an actual MoneyPlus card, only 6.7% of the respondents were confused. Second, even that 6.7% is likely to be a high number, because both surveys questioned members of the general public, rather than individuals who owned MoneyPlus Mastercards.[3] It would be logical to expect that holders of MoneyPlus cards are more likely to know where they can get cash using those cards. Thus, a survey of MoneyPlus cardholders should show a confusion rate of even less than 6.7%.
 
 
 23
 In the context of this case, we do not believe this percentage is significant. Most cases finding significant confusion have percentages which are substantially higher. Indeed, Professor McCarthy cites an 11% figure supporting a finding of confusion as being at the low end. 2 T. McCarthy, Trademarks and Unfair Competition § 32:54, at 783-85. See also Henri's Food Prods. Co. v. Kraft, Inc., 717 F.2d 352, 357 (7th Cir.1983) (7.6% insufficient); Wuv's Int'l v. Love's Enterprises, 208 U.S.P.Q. 736, 756 (D.Colo.1980) (9% insufficient).
 
 
 24
 We do not accept evidence of actual confusion if it is "de minimis." Nutri/System, 809 F.2d at 606-07. In this case, not only are the percentages small, but the actual number who might be confused is quite small, since the relevant population is not the 130 million Plus System cardholders but the 80,000 MoneyPlus cardholders. Cf. Quality Inns Int'l v. McDonald's Corp., 695 F.Supp. 198, 219 (D.Md.1988) (small percentages may prove confusion if they translate into large numbers of people). Visa's evidence is insufficient to prove significant actual confusion.
 
 CONCLUSION
 
 25
 In light of the weakness of Visa's mark, the substantial differences between the two marks, the fact that they are not in direct competition, and the lack of significant evidence of actual confusion,[4] we conclude that Visa has not established a probability of success on the issue of likelihood of confusion, or even serious questions going to the merits. See Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1420 (9th Cir.1984) (a "serious question" is "one as to which the moving party has a fair chance of success on the merits."). We therefore affirm the district court's denial of Visa's motion for a preliminary injunction.
 
 
 
 *
 The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Trademarks may be arbitrary (if the mark bears no relation to the product), suggestive of the product, or descriptive of that product. Arbitrary marks are the strongest marks, because the mark chosen has no relationship to the product sold, so any association of the mark with the product in the minds of consumers must come from the mark itself. At the other extreme, descriptive marks are weak marks, since they merely describe the product they are intended to promote
 
 
 [2]
 Visa argues that evidence of other "potential infringers" is irrelevant, relying on Eclipse, 894 F.2d at 1119. Eclipse held only that evidence of similar uses in unrelated industries was irrelevant. The evidence Eastern presented is of the use of Plus within the financial services industry
 
 
 [3]
 Since only MoneyPlus cardholders will ever see the two marks together, they are the only ones who could be confused by the marks in the real world. Therefore they, rather than the general public, are the relevant audience
 
 
 [4]
 Visa concedes that the fifth factor, Eastern's intent, does not support a finding of likelihood of confusion in this case