**MORRISON ENTERTAINMENT GROUP INC., a California Corporation, Plaintiff—Appellant,**

v.

**NINTENDO OF AMERICA, INC., a Washington Corporation, et al., Defendants—Appellees.**

* This panel unanimously finds this case suitable for decision without oral argument. See

**Morrison Entertainment Group Inc., a California Corporation, Plaintiff—Appellee,**

v.

**Nintendo of America, Inc., a Washington Corporation, et al., Defendants—Appellants.**

**Nos. 01–56694, 01–56961.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2002.*

Decided Feb. 4, 2003.

Fed. R.App. P. 34(a)(2).

Before CANBY, GOULD and
BERZON, Circuit Judges.

### MEMORANDUM**

Morrison Entertainment Group ("Morrison") appeals from the district court's grant of summary judgment to the defendants ("Nintendo").[1] Nintendo appeals from the district court's decision that it lacked standing to seek cancellation of the *Monster in My Pocket* mark. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

### I.

 Morrison contends that the *Pokémon* trademark is likely to cause "reverse confusion" with its mark, *Monster in My Pocket*. In other words, a consumer who sees a *Monster in My Pocket* product might think that the product was made by the same people who make *Pokémon*.

In reverse confusion cases, like forward confusion cases, in order to prevail on a trademark infringement action, a plaintiff must demonstrate a likelihood of confusion. To prevent summary judgment, a plaintiff must produce evidence sufficient to permit a reasonable trier of fact to find such a likelihood. *See, e.g., Interstellar Starship Services, Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109–10 (9th Cir.1999). The

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. For purposes of this disposition, the defendants will be treated as a single entity.

test for demonstrating likelihood of confusion traditionally turns on "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good ... bearing one of the marks" or confused as to endorsement or approval of the product. *See Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir.1998); *see also* 15 U.S.C. § 1114 (Lanham Act § 32). In evaluating whether a consumer is likely to be confused we consider the eight non-exclusive *Sleekcraft* factors. *Dreamwerks*, 142 F.3d at 1129 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979)). Because no single factor is dispositive, we focus here only on the factors that are particularly instructive as to possible confusion between the two marks at issue.

The marks are significantly different in sight and sound. The two marks look very different when written out as text. *Pokémon* is a single word with seven letters and an accented "e." In contrast, *Monster in My Pocket* contains four separate words, two of which begin with "m."

When they appear in their logo form, as they do on all products, it is even more clear that these marks are dissimilar. *Pokémon* appears in yellow typeface with a blue border and bubbly cartoon-like lettering. The *Monster in My Pocket* logo, in contrast, is predominantly green. The lettering uses a gothic-style font with jagged edges suggestive of ghouls and goblins. The "in My Pocket" portion of the logo is on a second line and surrounded by a box.

*Pokémon* and *Monsters in My Pocket* also sound very different. *Pokémon* is a three syllable single word beginning with a

"p." *Monster in My Pocket* sounds nothing like this—it has four words and six syllables total. The mark also begins with a "Ma" sound rather than a "Po" sound.

The meanings of the two marks are somewhat similar. The congruence in meanings, although not immediately apparent, stems from the fact that *Pokémon* is derived from the nickname for the Japanese version of the game, which is sold under the trademark *Pocket Monster*. In Japan, *Pocket Monster* is commonly shortened to "po-kay-mon." "Pocket monster" is undeniably similar, although not identical, in meaning to "monster in my pocket."[2] The similarity in meaning has less force than it might otherwise, however, as that similarity is not apparent to the casual observer, who will not know that *Pokémon* is short for "pocket monster." Instead, most observers are likely to simply view *Pokémon* as a fanciful word with no inherent meaning at all.

Further, any similarity in meaning between the two marks is not sufficient to overcome the very significant differences in the sight and sound of the mark. When the sight, sound, and meaning of the two marks are evaluated in combination, it is clear that the marks overall, and as encountered in the marketplace, are not similar.

Morrison has presented no evidence of actual confusion as to the source, affiliation, or endorsement of either its product or Nintendo's. The declarations upon which Morrison relies do not recount any specific instance of this type of actual confusion. Instead, they simply speculate that there may be some instances of future confusion.

---

**2.** Because we decide that *Pokémon* does have a similar meaning to *Monster in My Pocket,* we do not further address the Plaintiff's argument that *Pokémon* is the foreign language equivalent of "Pocket Monster." *See* McCarthy on Trademarks § 23:37 (the foreign equivalents doctrine is pertinent only to the meaning aspect of the similarity of marks factor).

Morrison's best argument is that people who encounter *Monster in My Pocket* may think it is a "knock-off" of *Pokémon.* To the extent that such a showing would constitute trademark infringement, a question we need not decide, Morrison has failed to provide sufficient evidence of this type of confusion.

Morrison first relies on an ebay auction site for evidence that consumers think *Monster in My Pocket* is a knock-off of *Pokémon.* That site instead suggests the opposite conclusion—that *Pokémon* was "inspired" by the *Monster in My Pocket* video.

Second, Morrison points to one declaration that suggests confusion regarding whether *Monster in My Pocket* is a knock-off of *Pokémon.* This declaration of Gerry Hurst, by a promoter of *Monster in My Pocket,* states that he has been asked by consumers whether Morrison's product is a "knock-off." Nowhere in the declaration does Hurst suggest that consumers think *Monster in My Pocket* is a knock-off because of the trademarks themselves. Instead, the single specific example he points to demonstrates that one industry insider thought that *Monster in My Pocket* was a copy of *Pokémon* because of similarities between the products, *not* because of anything related to the trademarks. Thus, this so-called confusion evidence does not support a § 32 Lanham Act claim.

Although Morrison is not required to conduct a survey in order to demonstrate actual confusion, such surveys are often used by plaintiffs to bolster their cases. The absence of such a survey is somewhat telling here, where there is an actual confusion survey in the record conducted by Nintendo showing that children in the target age-group are unlikely to confuse the two trademarks. Morrison has the burden to establish actual confusion and has failed to do so.

Nor are any of the other *Sleekcraft* factors sufficient to support Morrison's trademark infringement claim on the current record. Evidence that the marks are used on similar or even identical product lines and in the same marketing channels and are sold to careless purchasers cannot support a finding of likelihood of confusion where the marks are objectively not similar and there is no persuasive evidence of actual confusion. *See, e.g., Chesebrough–Pond's, Inc. v. Faberge, Inc.,* 666 F.2d 393, 395–98 (9th Cir.1982) (allowing use of *Match* for line of men's toiletries despite existence of *Macho* for similar products); *see also Lang v. Retirement Living Publ'g Co.,* 949 F.2d 576, 578–79, 584 (2d Cir. 1991) (holding that defendant's use of *New Choices for the Best Years* for a magazine did not infringe the trademark *New Choice Press* used for a publisher of books and tapes). *Cf. Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1446–47, 1450–52 (9th Cir.1988) (deciding that there is no likelihood of confusion between *Mrs. America* and *Miss World* as names for beauty pageants, given the different appearance, sound, and meaning of the marks and the unconvincing evidence of actual confusion). We conclude that no rational trier of fact could find a likelihood of confusion on the evidence presented. We therefore affirm the district court's grant of summary judgment to Nintendo on the trademark infringement claim.

## II.

Morrison contends that even if this court affirms the district court's finding that there is no likelihood of confusion, it should reverse the grant of summary judgment as to the intentional interference with prospective economic advantage and unfair trade practices claims. Morrison's intentional interference claim is based on Warner Brothers' refusal to allow Morri-

son to reacquire the video rights to the *Monster in My Pocket* video. Warner Brothers is not a party to this lawsuit, and there is no evidence that any of the defendants were involved in its decision. Accordingly, the district court's grant of summary judgment to Nintendo on the intentional interference claim was correct.

■ Morrison's unfair competition claim brought under California Business & Professions Code § 17200, cannot go forward without a showing of likelihood of confusion. Morrison makes no separate allegations other than those made in the trademark infringement action, to support his unfair competition claim. This court has previously held that in cases arising out of trademark infringement cases, actions pursuant to § 17200 are "substantially congruent to claims made under the Lanham Act," and require a finding that there is likelihood of confusion. *See Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1153 (quoting *Cleary v. News Corp.,* 30 F.3d at 1255, 1263 (9th Cir.1994)). Because there is no likelihood of confusion, Morrison's unfair competition claim cannot survive.

### III.

■ The final issue before us is the district court's dismissal of Nintendo's counterclaim cause of action to cancel Morrison's trademark. "A petition to cancel a registration of a mark [may] be filed by any person who believes that he is or will be damaged ... by the registration of [the] mark...." 15 U.S.C. § 1064.

In its pleadings, Nintendo's only stated basis for believing that it had been or would be damaged by Morrison's trademark was Morrison's "civil action alleging infringement of its registered trademark"—that is, this case. Answer ¶ 73. In other words, the cancellation counterclaim was essentially an affirmative defense to Morrison's infringement cause of

action. Nintendo no longer has this interest in cancelling the trademark, because the infringement action by Morrison has failed on other grounds. Thus, Nintendo's cause of action for cancellation is moot because it no longer presents a live controversy. *See City of Erie v. Pap's A.M.,* 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000).

**AFFIRMED.**