**EA ENGINEERING, SCIENCE, AND TECHNOLOGY, INC., Plaintiff,**

**v.**

**ENVIRONMENTAL AUDIT, INC., Defendant.**

No. CV 88–05329 SVW (SX).

United States District Court, C.D. California.

Jan. 5, 1989.

Carole E. Handler, Aaron Gundzik, Le-Boeuf, Lamb, Leiby & MacRae, Los Angeles, Cal. (Cleaveland D. Miller, of counsel), Semmes, Bowen & Semmes, Baltimore, Md., for plaintiff.

Lawrence J. Straw, Jr., Paul T. Gough, Straw & Gilmartin, Santa Monica, Cal., for defendant.

## MEMORANDUM OPINION AND AMENDED ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

WILSON, District Judge.

Plaintiff EA Engineering, Science, and Technology, Inc. ("Plaintiff") moves the Court for a preliminary injunction restraining Defendant Environmental Audit, Inc. ("Defendant") from infringing upon Plaintiff's service mark. Upon consideration of the parties' papers and submissions, the Court DENIES Plaintiff's Motion for a Preliminary Injunction.

## BACKGROUND

Plaintiff, a national environmental consulting firm, was incorporated in Maryland in 1973 under the name Ecological Analysts, Inc. Since at least 1976, Plaintiff has employed the letters "EA" in advertising and elsewhere to designate its services. In 1984, Plaintiff changed its name from Ecological Analysts, Inc. to its current name, EA Engineering, Science, and Technology, Inc. In 1986, Plaintiff EA reincorporated itself in Delaware.

Defendant, an environmental consulting firm, was incorporated in California in August 1986. Defendant's trade area has overlapped Plaintiff's trade area in that both corporations advertise, offer and render their services in the same markets in California. From August 1986 until April 1988, Defendant conducted only some of its business under the name Environmental Audit, Inc. while conducting other business under another corporate name, Donald Bright & Associates. On or about April 1, 1988, Defendant ceased use of the name Donald Bright & Associates and changed its corporate name to Environmental Audit, Inc. The earlier Environmental Audit, Inc. was dissolved. Defendant sent out announcements informing its customers and others about its corporate name change. In its announcements and dealings at this time, Defendant was using a logo consisting of the letters "EA" in a circle accompanied by the words "Environmental Audit, Inc."

When Plaintiff learned that Defendant was using the same two letters, "E" and "A", in its logo, Plaintiff sent Defendant a letter dated April 29, 1988, notifying it of its infringing activities and demanding that Defendant cease and desist from employing the letters "EA" or any colorable imitation thereof. Defendant replied in a May 4, 1988 letter that it would enter into negotiations regarding its use of the letters "EA."

Over the next month, Defendant redesigned its logo to portray the letters "EAI" against a round background and only used the letters in conjunction with its full corporate name, Environmental Audit, Inc. After making these changes, Defendant ordered new stationery, invoices, and other related items at a cost of approximately $8200.00.

When Plaintiff's counsel became aware of Defendant's redesign of its logo to "EAI" in connection with its corporate name on or about May 31, 1988, Plaintiff's counsel objected to the change. Despite Plaintiff's requests for Defendant to submit the design to Plaintiff before they implemented it, Plaintiff was not given a prior opportunity to approve the new design.

Defendant has begun to use the "EAI" logo in conjunction with its corporate name extensively.

## DISCUSSION

In this circuit, injunctive relief must be granted where there exists either: "(1) a combination of probable success on the merits *and* the possibility of irreparable injury *or* (2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in the movant's favor." *Sardi's Restaurant Corp. v. Sardi,* 755 F.2d 719, 723 (9th Cir.1985) (emphasis in original). The Court must thus look first at whether Plaintiff has a probable chance of success on the merits of its claims; second, whether Plaintiff faces the possibility of irreparable injury; and third, whether the balance of hardships tips in Plaintiff's favor.

### I. *Success on the Merits of Plaintiff's Claims*

In its First Amended Complaint,[1] Plaintiff makes six claims for relief: federal trademark infringement, 15 U.S.C. § 1114; common law trademark infringement; federal unfair competition, 15 U.S.C. § 1125(a); California Unfair Competition, Bus. & Prof.Code § 17203; California Dilution of Service Mark, Bus. & Prof.Code § 14330; and California Trade Name Infringement, Bus. & Prof.Code § 14402.

█ In Plaintiff's trademark claims, Plaintiff alleges that Defendant has infringed and continues to infringe Plaintiff's registered service mark "EA" followed by the words "EA Engineering, Science and Technology, Inc" by referring to itself as "EAI" followed by the words "Environmental Audit, Inc." Under 15 U.S.C. § 1114(1), any person who uses in commerce a colorable imitation of a registered service mark, without the registrant's consent and in a way that is likely to cause confusion, is liable for service mark infringement. The Court recognizes that Plaintiff has a valid federal registration for

its service mark "EA", that Plaintiff is using this mark in commerce, and that Defendant has not received consent from Plaintiff to use "EAI" in conjunction with its corporate name. The issue of whether Defendant's mark is a colorable imitation of Plaintiff's mark is one of the factors the Court assesses in determining the likelihood of confusion. Thus, the likelihood of confusion is the crucial issue. *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). Plaintiff's federal unfair competition claim and its related state claims also turn on the likelihood of confusion. *See id.; Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1362 (9th Cir.1985) (en banc); *Sardi's Restaurant,* 755 F.2d at 723.

### A. Measuring the Likelihood of Confusion Requires Applying a Multi-Factor Test.

█ A likelihood of confusion exists when a consumer is likely to purchase Defendant's services under the mistaken belief that they are Plaintiff's services or when a consumer is likely to assume that Defendant's services are in some way associated with Plaintiff. *See Rodeo Collection,* 812 F.2d at 1217; *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440, 443 (9th Cir.1980). In determining the likelihood of confusion, the following factors are relevant: 1) strength of the mark, 2) similarity of the mark, 3) marketing channels and proximity of the goods or services, 4) good faith and intent, 5) evidence of actual confusion, and 6) degree of care likely to be exercised by the purchaser. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979).

### 1). *Strength of Plaintiff's "EA" Service Mark*

█ A service mark's strength can be evaluated by first categorizing it as 1) generic, an inherently weak mark, 2) descriptive, 3) suggestive or 4) arbitrary, an inherently strong mark. *See Surgicenters of*

---

**1.** In a hearing on November 28, 1988, the Court granted Plaintiff leave to amend its Complaint to include a cause of action based on Plaintiff's

federal registration of its service mark. Plaintiff filed its First Amended Complaint the same day.

*America, Inc. v. Medical Dental Surgeries, Co.*, 601 F.2d 1011, 1014–15 (9th Cir. 1979). Arbitrary or fanciful marks will be afforded the widest range of protection from infringing uses. *AMF*, 599 F.2d at 349. An arbitrary mark is one that neither suggests nor describes the goods or services associated with the mark. A generic mark is entitled to no protection. 15 U.S.C. § 1052. In between arbitrary and generic marks are descriptive and suggestive marks. Descriptive terms are ordinarily not protected as trademarks. 15 U.S.C. § 1052(e)(1). They may become valid marks only after a showing that they have acquired secondary meaning in the minds of the consuming public. *Carter–Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 800 (9th Cir.1970).

■ The Court finds that Plaintiff's "EA" service mark is an inherently strong arbitrary mark. Arbitrary arrangements of letters have generally been given a wide scope of protection because it is assumed that "it is more difficult for buyers to remember a series of arbitrarily arranged letters than marks which consist of pictures or recognizable words." 1 McCarthy, *Trademarks and Unfair Competition*, § 7:2 at 182 (2d ed. 1984). Plaintiff's mark does not describe environmental services generally nor is it suggestive or descriptive of any particular services offered by Plaintiff. Hence, the Court views the mark "EA" as an arbitrary and strong mark.

Defendant contends, however, that if the Court applies the "imagination" and "need" tests, the Court must conclude that Plaintiff's mark is weak. The "imagination" test focuses on the amount of imagination required for a consumer to associate the mark with the services it identifies. *Rodeo Collection*, 812 F.2d at 1218. The "need" test asks to what extent a mark is actually needed by competitors to identify their services. *Id.* The two tests are related because the more imagination a consumer requires to associate a service mark with its provider, the less likely the mark would be needed by competitors to identify their services. *Id.* (citing *Union Carbide Corp. v. Ever–Ready Inc.*, 531 F.2d 366, 379 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976)).

Since the mark "EA" does not connote on its face any particular affiliation with environmental consulting services, the Court believes that a consumer requires much imagination to associate "EA" with Plaintiff. The Court also finds that the need aspect for the letters "EA" is low. Although Defendant has submitted to the Court evidence that the United States Patent Office has issued fifty-one other trademark registrations for the letters "EA" or "EA" in conjunction with another letter, less than five of those marks have been used in the field of environmental consultation. Consequently, the "imagination" and "need" tests support the Court's conclusion that Plaintiff's mark is strong.

### 2). Similarity between Plaintiff's and Defendant's Marks

Plaintiff contends that there is a high degree of similarity between its mark "EA" and Defendant's mark "EAI." Plaintiff relies on three cases to demonstrate that courts have found similarity and the likelihood of confusion between two sets of arbitrarily arranged letters that substantially overlap one another. *Continental Connector v. Continental Specialties*, 492 F.Supp. 1088 (D.Conn.1979) ("CSC" and "CCC"); *Edison Brothers Stores, Inc. v. Brutting E.B. Sports–International GmbH*, 230 U.S. P.Q. 530 (T.T.A.B.1986) ("EB" and "EBS"); *American Optical Corp. v. Southwest Petro–Chem, Inc.*, 175 U.S.P.Q. 317 (T.T.A.B.1972) ("AO" and "AOC").

The Court finds Plaintiff's argument unpersuasive. While Plaintiff draws the contrast between Plaintiff's mark "EA" and Defendant's mark "EAI", the Court feels the proper comparison is between "EA" and "EAI" in conjunction with Defendant's full corporate name, Environmental Audit, Inc. Defendant has represented to the Court that in all its dealings it only uses the letters "EAI" in connection with its full corporate name. Bright Declaration ¶ 10. Plaintiff has presented no evidence to dispute this representation. As Plaintiff itself noted, we must not dissect and consider each mark in a piecemeal fashion; rather, we must look at the marks in their entirety.

*See California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985); *Franklin Mint Corp. v. Master Managing Corp.*, 667 F.2d 1005, 1007 (C.C. P.A.1981). Plaintiff's cases can thus be distinguished because they focused on a comparison between two sets of letters rather than between one set of letters and another set of letters *plus* a full corporate name. On the evidence before the Court,[2] we feel that the similarity between Plaintiff's and Defendant's marks is minimal.

This conclusion is bolstered by assessing the similarity of the marks in terms of their sight, sound, and meaning, *see Rodeo Collection*, 812 F.2d at 1219; *AMF*, 599 F.2d at 351, and by relevant case law. In regard to sight, while the two marks do share the letters "EA" in common, the addition of "I" to Defendant's "EA" plus the use of its corporate name sufficiently distinguishes the two marks visually. The addition of "I" and Defendant's corporate name also differentiates the marks on the basis of sound and meaning.

Case law suggests that the addition of a company's full name to its logo serves to sufficiently separate itself from a competitor using a somewhat similar logo. *See Alpha Industries*, 616 F.2d at 444 (appellee's use of the word "ALPHA" in connection with another word or words (steel, tube, shapes) significantly distinguishes it from appellant's use of the word "ALPHA" alone); *AMF*, 599 F.2d at 351, 355 (court's recommended remedy of a limited mandatory injunction requires the presence of the logo in conjunction with the company's name to eliminate the likelihood of confusion); *Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981) (otherwise similar marks, "Alpha" and "Alpha," are not likely to be confused when "Alpha" is used together with the clearly displayed name of the manufacturer). Thus, although we must weigh the marks' similarities more heavily than their differences, *see Rodeo Collection*, 812 F.2d at 1219, we find that Defendant's use of "EAI" with its corporate name is dissimilar from Plaintiff's "EA" mark.

### 3). *Proximity of Plaintiff's and Defendant's Marketing Channels and Service*

As conceded by Defendant, Plaintiff and Defendant are both engaged in environmental consulting, offer similar services, and have overlap in some of their trade areas.

### 4). *Defendant's Good Faith and Intent in Adopting its Mark*

Plaintiff claims that Defendant has demonstrated bad faith and a wrongful intent in adopting its "EAI" service mark. In support of its argument, Plaintiff contends that Defendant knew that Plaintiff was using the "EA" mark when it adopted its "EA" mark on or about April 1, 1988. Defendant's subsequent change to "EAI" did not constitute compliance with Plaintiff's request to stop infringing Plaintiff's mark. Further, Defendant showed bad faith in not allowing Plaintiff to review and approve its "EAI" mark before it implemented it.

The Court remains unconvinced that Defendant displayed bad faith and improper intent in adopting its mark. While Defendant should have known that its April 1, 1988 use of the mark "EA" most likely infringed Plaintiff's service mark, Defendant's prompt action in destroying all stationery and related items with the "EA" logo on it when it learned of possible infringement from Plaintiff's counsel demonstrates a good faith effort to end its infringement. The Court finds at this stage of the proceedings that Defendant's subsequent adoption of the mark "EAI", always used in conjunction with Defendant's full corporate name, evinces a good faith effort to avoid infringing Plaintiff's service mark. Defendant did not have to allow Plaintiff a veto power over the adoption of its "EAI" mark to have acted in good faith.

### 5). *Actual Confusion between Plaintiff's and Defendant's Marks*

Plaintiff has submitted the declarations of Ellen Frosch and Tom Carrol to demonstrate that actual confusion has occurred between Plaintiff's and Defendant's marks.

**2.** We limit our findings of minimal similarity to this Order and on the evidence before us. Should Plaintiff be able to produce evidence that Defendant uses "EAI" not in connection with its full corporate name, we will reconsider our conclusion regarding similarity accordingly.

Ms. Frosch and Mr. Carrol, both employees of Plaintiff, claim that while they were at an April 6, 1988 environmental consulting trade show on behalf of Plaintiff, persons not associated with Plaintiff asked them about employees or services of Plaintiff. Frosch Declaration ¶¶ 5–6; Carrol Declaration ¶ 5. When Ms. Frosch and Mr. Carrol responded at different occasions that the employee did not work with Plaintiff or that Plaintiff did not provide those type of services, the inquiring person would indicate that the employee worked with or the services were available at the "other EA." Frosch Declaration ¶¶ 5–6; Carrol Declaration ¶ 5.

The Court does not feel that these declarations establish actual confusion between Plaintiff's and Defendant's marks. First, the trade show occurred on April 6, 1988, five days after Defendant adopted the "EA" logo. It strains credulity to believe that potential clients would so quickly associate Defendant with "EA." Second, Plaintiff has not shown that the "other EA" referred to Defendant. Third, Plaintiff has not presented any evidence that there has been any actual confusion between Plaintiff's mark and Defendant's use of "EAI" in conjunction with its corporate name.

### 6). *Degree of Care Likely to be Exercised by Purchaser*

When services are expensive and the purchasers are knowledgeable and sophisticated, a greater degree of care can be expected from the buyer; confusion, though, may still be likely. *See AMF*, 599 F.2d at 353; *Alpha Industries*, 616 F.2d at 444. Both Plaintiff and Defendant engage in highly specialized services that entail a sophisticated clientele, a negotiated contract generally involving many thousands of dollars, and close working relationships with the client. Thus, the Court observes that it is highly unlikely that a sophisticated client interested in hiring an environmental consultant would think that "EAI" in conjunction with Environmental Audit, Inc. would represent Plaintiff.

### B. Plaintiff Has Not Demonstrated the Likelihood of Confusion.

In weighing all the factors relevant to a determination of the likelihood of confu-

sion, the Court rules that Plaintiff has not met its burden of showing the likelihood of confusion. While Plaintiff's mark is strong and Plaintiff offers the same services in the same markets as Defendant, the lack of evidence of bad faith, wrongful intent, and actual confusion coupled with the dissimilarity of the two marks and the sophistication of the clients militates against a finding of a likelihood of confusion. Since a likelihood of confusion is an essential element in all Plaintiff's claims, we hold that Plaintiff has not shown how it will be successful on the merits of its claims.

## II. *Probability of Irreparable Harm*

Although "[c]ourts readily find irreparable harm in trademark infringement cases because of the victim's inability to control the nature and quality of the infringer's goods," *Wesley–Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862, 867 (7th Cir.1983), Plaintiff still has the burden of demonstrating how irreparable harm will occur should injunctive relief not be granted. Plaintiff alleges that it has expended substantial sums of money in building up a reputation under its "EA" service mark for quality services. Since Plaintiff cannot control how Defendant would use its mark especially with respect to the quality of services, Plaintiff asserts that it will be irreparably harmed.

Having determined that Plaintiff has not established a likelihood of confusion, it does not follow that Plaintiff will be irreparably harmed if Defendant uses the mark "EAI" with its corporate name. Clients will associate Defendant's mark with the quality of its services, not Plaintiff's services, because Defendant's mark is not confusingly similar to Plaintiff's mark. Absent any independent showing of irreparable harm, we find that Plaintiff has not met its burden. *See generally Rodeo Collection*, 812 F.2d at 1220; *Sardi's Restaurant*, 755 F.2d at 725.

## III. *Balance of Hardships*

The Court rules that the balance of hardships as it currently stands tips in favor of Defendant. Plaintiff has not demonstrated how it will be irreparably harmed since we

hold that there does not exist a likelihood of confusion between Plaintiff's and Defendant's marks. Defendant, on the other hand, will be forced to change its name, losing whatever good will it has accrued and creating confusion among its clients and potential clients. Weighing Defendant's hardships against the unlikelihood of confusion between the marks and the absence of Plaintiff's evidence of irreparable harm, Defendant's hardships prevail.

## CONCLUSION

The Court concludes that Plaintiff has failed both tests to obtain preliminary injunctive relief. Plaintiff has not demonstrated probable success on the merits of its claims, the possibility of irreparable injury, nor the tipping of the balance of hardships in its favor. Consequently, we DENY Plaintiff's Motion for a Preliminary Injunction.

The Court hereby sets the trial date in this case for February 7, 1989 at 9:00 a.m. before the Honorable Stephen V. Wilson in Courtroom F of the United States Courthouse, 312 North Spring Street, Los Angeles, California. A Pretrial Conference is set for February 2, 1989 at 4:30 p.m.

IT IS SO ORDERED.