**POSTX CORPORATION, a California corporation, Plaintiff,**

v.

**The docSPACE COMPANY, INC., a Canadian corporation, Defendants.**

**No. C 99–20241 RMW.**

United States District Court, N.D. California.

Aug. 5, 1999.

Barbara R. Shufro, Patricia L. Cotton, Lisa M. Cho, Pillsbury Madison & Sutro LLP, Palo Alto, CA, for plaintiff.

Norman H. Beamer, Gabrielle E. Higgins, Fish & Neave, Palo Alto, CA, Vincent N. Palladino, Victor F. DeFrancis, Fish & Neave, New York, NY, for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

WHYTE, District Judge.

The motion of plaintiff PostX Corporation ("plaintiff" or "PostX") for preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) was heard on July 30, 1999. The court has read the moving and responding papers and heard the argument of counsel. For the reasons set forth below, the court denies plaintiff's motion.

## I. BACKGROUND

Plaintiff is a Cupertino, California company that develops and designs software to provide its customers with services for secure delivery of electronic mail ("email")

over the Internet. Declaration of Ravi Thomas in Support of PostX's Motion for a Preliminary Injunction ("Thomas Decl.") ¶ 2. Plaintiff's services and software are sold primarily to companies that send large volumes of confidential information to their own customers. *Id.* Using plaintiff's software, the customer can send secure email correspondence to an email recipient. *Id.* ¶ 3. The correspondence appears initially on the recipient's computer screen as an attachment to an email message sent by plaintiff's customer. Declaration of Barbara R. Shufro in Support of PostX's Motion for a Preliminary Injunction ("Shufro Decl.") Exh. C at 3. When the recipient clicks on the attachment, the image of the face of an envelope appears on the recipients' screen. *Id.* Exh. C at 4; Thomas Decl. ¶ 3. Plaintiff's logo appears in the upper right hand corner of the envelope, in the place where a stamp would be on an envelope. *Id.* The recipient then clicks on the "Open" icon at the bottom right corner of the envelope, and the envelope begins "opening." Shufro Decl. Exh. C at 4; Thomas Decl. ¶ 5. The recipient enters a pre-determined account identification number, which, upon validation, allows the recipient to then view the secure document which was sent by plaintiff's customer. Thomas Decl. ¶ 8.

Plaintiff's logo (the "PostX logo") consists of a stylized line drawing of the back of an envelope, with a black keyhole design on the back flap of the envelope and the word "POSTX" appearing below the flap. *See* Exh. A to Plaintiff's Motion for Preliminary Injunction. The envelope is drawn in blue as it appears on the recipient's screen. Declaration of M. Michael Serbinis ("Serbinis Decl.") Exh. Decl. Exh. 7 at 5. Plaintiff has marketed its services and software to its customers and the public using the PostX logo since September, 1996. Thomas Decl. ¶ 8. Plaintiff has placed the PostX logo on all of its marketing materials, computer software labels, manuals and documentation, packaging, promotional and advertising materials and on its Web site. Thomas Decl. ¶ 10. Plaintiff has also displayed its logo at nu-

merous trade shows. ¶ 11. Plaintiff asserts that it has expended over $1.7 million in connection with promotion of the PostX logo. *Id.* ¶ 13.

Defendant The docSpace Company ("defendant" or "docSpace"), founded in 1997, offers Web-based services for delivering, storing, managing and collaborating on information securely over the Internet. Declaration of Evan V. Chrapko ("Chrapko Decl.") ¶ 2. The two principal services that defendant currently markets are "docSpace Express" and "docSpace Drive." Serbinis Decl. ¶ 25.

DocSpace Express allows registered users of the service to send secure email documents to email recipients. The docSpace Express customer user registers by submitting identifying information and choosing a user ID and password at defendant's Web site. The user then logs into docSpace Express, and clicks on "Send" to access a document send page. At the send page, the user types in the email address for each recipient as well as a subject for delivery and a short message. The user chooses the documents which he or she wants to be delivered to the recipient by entering the filenames of the documents or by using a Windows file management browser. *Id.* ¶¶ 26, 28–31, Exh. 1.

After filling out the send page, the user clicks on "Send," and the document is uploaded to the docSpace server in Virginia. That server then sends each intended recipient an email notification that a document is available on the server. *See Id.* Exh. 1 Figs. 5, 6. A recipient who is a registered docSpace user then types in his or her user I.D. and password and logs in to his or her docSpace Express account. A non-registered user is presented with a "welcome" page which introduces him or her to docSpace and invites the recipient to register. Then, the user is sent to his or her docSpace "in-box," which lists the document or documents that have been sent to the recipient via docSpace Express. The recipient then clicks on the document he or she wishes to see and is taken to a

page where he or she can read the message, view the list of documents associated with that delivery, and download the documents. *Id.* ¶¶ 33–35. Other than the email delivery notification, all Web pages encountered by the sender or recipient bear the docSpace logo in the upper left hand corner of the page. *Id.* ¶ 39, Exh. 1.

Defendant's other service, docSpace Drive, is a Web-based document storage service that allows people to access documents stored in one centralized, secure location. *Id.* ¶ 40. DocSpace Drive allows users to back up document files, organize files in directory structures and perform other file management operations. *Id.* ¶ 40. All Web pages that the docSpace Drive user encounters include the docSpace logo in the upper left corner of the page.

Defendant's logo (the "docSpace logo") is a black outline drawing of a rectangular file folder with a black keyhole design at the center and graduated horizontal lines extending from the left edge. *See* Serbinis Decl. Exh. 5. The word "docSPACE" appears directly below the graphic, with "doc" in lower case bold and "SPACE" in upper case outlined letters. *Id.* Michael Serbinis, co-founder of defendant and creator of the logo, does not believe that he was aware of the PostX logo when he designed the docSpace logo in January and February of 1998. Serbinis Decl. ¶¶ 2, 42, 45, 49. DocSpace has spent close to $600,-000 in connection with the marketing of the docSpace logo through design of its graphics and Internet Web site, publications, advertising, promotions, mailings, public relations and trade shows. Chrapko Decl. ¶ 41.

Plaintiff filed a complaint for injunctive relief and damages against defendant on March 22, 1999, alleging trademark infringement and false designation of origin, trademark dilution and unfair competition.[1] On the present motion for a preliminary injunction, plaintiff states that it "is not requesting that docSpace cease use of its logo," but is rather "merely requesting that docSpace cease from using the keyhole picture in its mark." Plaintiff's Reply in Support of Motion for Preliminary Injunction ("Reply") at 14:13–14.[2]

## II. ANALYSIS

A court may issue a preliminary injunction where the moving party has shown (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). "These are not two distinct tests, but rather the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Id.,* quoting *San Diego Comm. Against Registration & Draft v. Governing Bd. of Grossmont Union High Sch. Dist.,* 790 F.2d 1471, 1473 n. 3 (9th Cir. 1986).

### A. Likelihood of Success on the Merits—Trademark Claim

In order to succeed on its federal trademark claim, plaintiff must establish both (1) that it has a protected interest (or trademark right) in the service allegedly infringed by defendant's service and (2) that defendant's service usage is likely to cause consumer confusion and thus infringe upon that interest. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir.1985).

#### 1. Protected Interest

Plaintiff has been using its trademark logo since 1996. Inherently distinctive trademarks and suggestive trademarks are protected without evidence of secondary meaning. *See AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 349 (9th Cir.1979). Defendant does not argue that

---

1. Neither party has raised the unfair competition claim on this motion.

2. The court notes that plaintiff's Proposed Order consists of language which is far broader.

plaintiff's mark is unprotected. The court finds that plaintiff has satisfied this element.

## 2. Likelihood of Confusion

■ Although the Ninth Circuit has enumerated likelihood of confusion tests as guidelines for the district court, the tests were not meant to recite required factors, but rather were meant to serve as "a non-exclusive series of factors that are helpful in making the ultimate factual determination." *Eclipse Assocs. Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990). These factors include: strength of mark, proximity of the goods, similarity of marks, evidence of actual confusion, similarity of marketing channels, care likely to be exercised by purchaser and intent of second user. *Id.* at 1117 and n. 2; *Sleekcraft*, 599 F.2d at 348–49.[3]

### (a) Strength of Mark

A mark's "strength" is one of the factors to be considered in determining likelihood of confusion.

> The strength of a given mark rests on its distinctiveness. The scope of protection afforded a strong mark is greater than that afforded a weak one. In determining the distinctiveness of a mark one looks to the degree to which the public associates the mark with the particular source. As we stated in Rodeo Collection, a "mark's strength can be measured in terms of its location along a continuum stretching from arbitrary, inherently strong marks, to suggestive marks, to descriptive marks, to generic, inherently weak marks." [citation omitted].

*Miss World (UK) v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1988). "In general, the more unique or arbitrary a mark, the more protection a court will afford it." *Nutri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 605

(9th Cir.1987). "Generic" marks are afforded no protection; "descriptive" or "suggestive" marks are given moderate protection and "arbitrary" or "fanciful" marks are awarded maximum protection. *Id.* Arbitrary or fanciful marks are "strong," whereas descriptive or suggestive marks are "weak." *Id.* A descriptive mark "describes a characteristic or ingredient of an article or service (i.e., 'Park 'N Fly')," while a suggestive mark "suggests, rather than describes, an ingredient, quality or characteristic (i.e., Sleekcraft)." *Id.*

> We apply the "imagination test" and the "need test" to determine the strength of a mark. [citation]. The imagination test asks how much imagination a consumer must use to associate a given mark with the goods or services it identifies. The product signified by an arbitrary mark requires great imagination. The more imagination required, the stronger the mark is. The "need test" approaches the problem from the opposite end. It asks to what extent a mark is actually needed by competitors to identify their goods or services. If "the message conveyed by the mark about the goods or services is so direct and clear that competing sellers would be likely to [need to] use the term in describing or advertising their goods [or services], then this indicates the mark is descriptive." [citation]. As the amount of imagination needed increases, the need of the mark to describe the product decreases. [citation].

*Miss World*, 856 F.2d at 1449.

■ The court finds that plaintiff's mark is suggestive. The drawing itself, an envelope containing a keyhole, suggests a concept of safe mail, although tying the design to plaintiff's product requires some imagination. The word "POSTX" appearing on the envelope drawing is also is

---

**3.** The court in *Dr. Seuss Enterprises L.P. v. Penguin Books,* 109 F.3d 1394 (9th Cir.1997) noted that the Ninth Circuit has employed five-factor, six-factor and eight-factor tests in analyzing likelihood of confusion. *Dr. Seuss,*

109 F.3d at 1404 n. 13. The court, like the Ninth Circuit in *Dr. Seuss,* looks to all eight factors as set forth in *Sleekcraft* in order to be over-inclusive. Both parties addressed all eight factors on this motion.

suggestive of mail delivery, requiring, again, a certain degree of imagination to link it to plaintiff's email product. An envelope bearing a keyhole and the word "POSTX" does not literally describe plaintiff's product, it suggests it by analogy and thereby requires that the viewer use some imagination. The mark is moderately strong based on the design of the mark and the product it represents.

Defendant has submitted evidence of over a dozen other marks used by third party companies which incorporate the keyhole shape in their designs, some of which place the keyhole within a rectangular outline shape or even an envelope shape, arguing that plaintiff's mark is weakened by the fact that it is in a "crowded field" and is "hemmed in on all sides by similar marks on similar goods." *See* docSpace's Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Opposition") at 14:9–26, citing *Miss World*, 856 F.2d at 1449. Plaintiff counters that certain of the marks, which include those most similar to plaintiff's, are used by companies providing dissimilar products. Those companies are, however, engaged in businesses which, by plaintiff's own description, "provide technologies for ensuring secure electronic communications," *see* Reply at 12 n. 8., and the businesses are thus part of a field which at least broadly would include or be related to plaintiff's business of providing secure email document transmission. The presence of those marks (and those marks which plaintiff contends are "dissimilar" but which clearly use, to varying degrees, elements of plaintiff's mark's design, including the keyhole) to represent their computer security services or products weakens plaintiff's mark. *See Miss World*, 856 F.2d at 1449.

**(b) Proximity of the Goods**

■ The greater the similarity between the goods offered by the plaintiff and the defendant, the more likelihood there is of consumer confusion. *Miss World*, 856 F.2d at 1450. Here, plaintiff's software and defendant's docSpace Express service

are similar. Both are Internet services which offer the customer a way to send secure documents via email, although the methods the parties use to do so differ. Defendant's service uses a "pull" approach whereby the recipient accesses the document from a remote server, while plaintiff's software product uses a "push" approach, directing the document directly to the recipient as an email attachment. Further, the type, sequence and design of the pages which the recipient opens in order to access the secure document differs between the two products. However, the function that the customer is purchasing from both parties is nonetheless essentially the same. The court finds that the types of goods represented by the parties' marks are similar.

**(c) Similarity of the Marks**

■ The similarity of the marks is determined by their sight, sound and meaning. *Miss World*, 856 F.2d at 1450–51. Even when the marks are identical when viewed in isolation, "their similarity must be considered in light of the way the marks are encountered in the marketplace. . . ." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984).

Here, the only similarity between the two marks is the black keyhole design which each logo incorporates. In the PostX logo, however, the keyhole appears inside a somewhat stylized, curved design clearly representing an envelope, whereas in the docSpace logo the keyhole is placed in a straight-edged design clearly representing a file-folder. The PostX logo envelope is blue, at least as it appears on the pages the recipient sees, while defendant's file folder design is black. *See* Serbinis Decl. Exh. 1, Exh. 7 at 5. The PostX logo contains the word "POSTX" in the middle of the logo. The docSpace logo bears the word "docSPACE" directly underneath the file folder drawing, in text approximately the same size as that drawing, with "doc" in bold and "SPACE" in outlined letters.

Defendant states that the "docSPACE" word always appears together with the design on the logo. Chrapko Decl. ¶ 9.

■ The parties dispute whether the graphic design element or the word element is the "dominant" feature of each logo. The court finds the arguments misplaced, as marks are not to be dissected and considered piecemeal; "rather, we must look at the marks in their entirety." *EA Engineering v. Environmental Audit, Inc.*, 703 F.Supp. 853, 856 (C.D.Cal.1989). Here, the marks are clearly distinguished by the different company names appearing on each graphic in different type styles and with different placement. *See id.* at 857 ("[c]ase law suggests that the addition of a company's full name to its logo serves to sufficiently separate itself from a competitor using a somewhat similar logo."). The names differentiate the marks not only by sight, but also by their sound and, perhaps, meaning. *See id.; Miss World,* 856 F.2d at 1450–51.(the court assesses the similarity of the marks in terms of their sight, sound and meaning.). The two designs clearly depict two different objects, an envelope and a file folder, rendered in different drawing styles. Plaintiff's logo is outlined in blue; defendant's is black. Further, defendant's logo has horizontal lines extending from its left edge; plaintiff's does not. The *only* similarity between the two marks is the keyhole shape at the center of each mark. It is unlikely that a person would confuse the two marks given their different shapes, colors, designs and graphic depictions, and given that the logos prominently bear different identifying company names in different lettering. The sole fact that both marks contain a keyhole shape does not does not make the marks, as a whole, similar.

The court must analyze the similarity of the marks "in light of what occurs in the marketplace, taking into account 'the circumstances surrounding the purchase of the goods.'" *Dr. Seuss Ent. LP. v. Penguin Books USA,* 924 F.Supp. 1559, 1570 (S.D.Cal.1996), citing *Walt Disney Prods. v. the Air Pirates,* 581 F.2d 751, 759 (9th Cir.1978). Plaintiff points out that both marks are relatively small as they appear on the email recipient's computer screen and are subject to varying qualities of transmission and equipment, and thus may be harder to distinguish than larger, printed marks. However, the logos also appear in other formats, e.g., promotional items, banners, manuals, packaging and stationery. *See* Thomas Decl. ¶¶ 10, 11; Chrapko Decl. ¶ 41. Further, *all* logos which appear on a computer screen are subject to the vagaries of transmission and equipment, and they are often of necessity somewhat small so as to allow space for the remaining information on the screen. A mark should not be given extra protection for the sole reason that it is viewed on, among other formats, a computer screen.

Viewed as a whole in the manner that they are encountered in the marketplace, the court finds that the marks are readily distinguishable.

### (d) Evidence of Actual Confusion

■ Evidence of actual confusion is strong evidence of likelihood of confusion, *see Miss World,* 856 F.2d at 1451, and lack of actual confusion can be a relevant factor in determining likelihood of confusion. *See Paul Sachs Originals Co. v. Sachs,* 325 F.2d 212, 216 (9th Cir.1963). Here, plaintiff has set forth no evidence of actual confusion such as misdirected emails, misplaced telephone calls or confusion in orders. The lack of evidence of any actual confusion over the course of the year and a half when the marks have both been in use bears upon whether confusion is likely.

### (e) Marketing Channels Used

Both parties state that they attend technology trade shows, promote their product or service via their Web sites, and market through mailings, advertising and promotions. Thomas Decl. ¶¶ 11–13, 16; Chrapko Decl. ¶ 41. The court has not been convinced that the types of customers to which each party sells its services are so

different that the marketing channels must, as defendant argues, be different. Although certain of plaintiff's materials state that the financial industry is its "target market," *See* Chrapko Decl. Exh. 57, defendant's market, which is apparently businesses which want to send secure email documents, *see* Opposition at 20:3–7, would overlap. The evidence shows that the marketing channels which the parties use are similar.

### (f) Degree of Care Likely to be Exercised by the Purchaser

Where the buyer of goods or services has expertise in the field or when the goods are expensive, "the buyer can be expected to exercise greater care in his purchases," though confusion may still be likely. *Sleekcraft,* 599 F.2d at 353. Here, both parties' customers are corporations and institutions, and the products they are purchasing are expensive, with initial fees or applications costs in the tens or hundreds of thousands of dollars. Chrapko Decl. ¶¶ 32–38. Such businesses, paying for such products, would be expected to exercise care in knowing the product and distinguishing the seller from its competitors; though, as cautioned by the court in *Sleekcraft,* confusion is still possible. Plaintiff argues that the relevant group for purposes of this factor includes the *recipients* of the email documents sent by the customer, which could include unsophisticated individuals as opposed to large corporations. Motion at 9–13. The relevant public for purposes of determining the broad question of likelihood of confusion is the cross-section of the populace that comes into contact with the mark, *see Ball v. American Trial Lawyers Association,* 14 Cal.App.3d 289, 308, 92 Cal.Rptr. 228 (1971), and the experience of the general public, including email recipients and others, is relevant in the analysis of such factors as strength of the mark, similarity of the marks and actual confusion. However, the "sophisticated purchaser" factor applies, by its terms, only to purchasers of the products at issue. The question it poses is whether the people or entities which buy the product are likely to exercise more than the typical amount of caution when doing so. Here, the level of sophistication of the parties' customers and the cost of the products purchased weighs in defendants' favor as to this factor.

### (g) Defendant's Intent

Evidence of wrongful intent, when present, has some bearing on the likelihood of confusion. *Miss World,* 856 F.2d at 1451. The "intent" factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *W.W.W. Pharmaceutical Co. v. Gillette Co.,* 984 F.2d 567, 575 (2nd Cir. 1993).

The creator of the docSpace logo has stated under oath that he did not know of the PostX logo when he developed the docSpace logo. *See* Serbinis Decl. ¶ 49. Plaintiff offers no evidence of bad faith, and cites no authority supporting its argument that defendant's use of its logo shows wrongful intent because it "indicates an obvious failure to investigate users' rights." It is true, as plaintiff states in its reply, that absence of malice is not a "defense" to an infringement claim; intent is simply one of the factors that the court may look to in analyzing an alleged infringement.

### (h) Likelihood of Expansion of the Product Lines

Defendant is correct that plaintiff has presented no evidence regarding any expansion into the types of document storage services that defendant's docSpace Drive service provides. Plaintiff's motion focuses, rather, on the docSpace Express product which, as discussed above, provides a service, secure email document delivery, which is similar but not the same as that of plaintiff's existing product.

**1064**

### (i) Balancing of Factors

■ Plaintiff's mark is a moderately strong suggestive mark which is weakened by the fact that it is in a field of several marks having a keyhole feature and representing products which are also related to computer security. Some also even use an envelope in their design. As to the proximity of the goods, plaintiff's and defendant's products are similar but not identical. Although the marketing channels used by the parties are similar, the parties' customers are likely to exercise care in purchasing the products. Further, there is no evidence of actual confusion and the logos are distinctive enough that it is unlikely that there will be confusion. The court concludes that plaintiff has not shown a likelihood of success on the merits with regard to its trademark claim.

### B. Likelihood of Success on the Merits—Dilution Claim

■ Defendant contends in its opposition that plaintiff cannot succeed on its dilution claim because, in the Ninth Circuit, "the protection afforded by California's anti-dilution statute extends only to highly distinctive, well-known marks," for example, " 'Tiffany,' 'Polaroid,' 'Rolls Royce,' and 'Kodak.' " Opposition at 21:20–26, citing *Metro Pub., Ltd. v. San Jose Mercury News. Inc.,* 861 F.Supp. 870, 881 (N.D.Cal.1994) and *Sykes Laboratory, Inc. v. Kalvin,* 610 F.Supp. 849, 858 (C.D.Cal.1985). Plaintiff fails to address this argument. The court agrees that plaintiff's logo is not highly distinctive, well-known or famous, and plaintiff has offered no evidence to show that it is. Plaintiff has failed to show a likelihood of success on the merits as to this claim.

### C. Irreparable Injury

■ It is ordinarily presumed that a plaintiff who has shown likelihood of confusion will suffer irreparable injury absent injunctive relief. *Rodeo Collection,* 812 F.2d at 1220. Here, the plaintiff has not shown likelihood of confusion and therefore is not entitled to the presumption of irreparable injury. Plaintiff has, further, made no independent showing of irreparable injury. If defendant markets products or services of poor quality in the future, plaintiff would only be injured thereby if there were a likelihood of confusion between the parties' products, which the court holds there is not.

### D. Serious Questions Raised

"Serious questions" have not been raised concerning the merits of this case because, as is discussed above, plaintiff has not shown a fair chance of success on the merits. *See Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1421 (9th Cir.1984) (a "serious question" is one to which the movant has a "fair chance of success on the merits.").

### E. Balance of Hardships

Defendant has submitted evidence that, if it is enjoined from using its mark pending trial, it will have to pay $250,000 to alter its Web site and other materials at a time when the company is in its start-up stage. Chrapko Decl. ¶ 43. Although plaintiff has submitted evidence that its has spent $1.7 million in connection with promotion of the PostX logo, Thomas Decl. ¶ 8, it has not shown that loss of some or all of that expenditure will occur as a result of defendant's continued use of its mark because it has not shown a likelihood of confusion of the two marks or irreparable injury. The court finds that the balance of hardships tips in favor of defendant.

### III. ORDER

For the foregoing reasons, the court denies plaintiff's motion for a preliminary injunction.